UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,   Case No. 21-cr-20088

    Plaintiff,   F. Kay Behm
v.   United States District Judge

JEREMY MCCALLUM,

    Defendant.
_____ /

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
AND FOR AN EVIDENTIARY HEARING (ECF NO. 54)**

**I.   INTRODUCTION**

This matter is before the court on Defendant Jeremy McCallum's Motion to Suppress and for an Evidentiary Hearing. (ECF No. 54). On May 4, 2022, Defendant was charged in a superseding indictment with ten counts of Sexual Exploitation of Children pursuant to 18 U.S.C. §§ 2251(a), (d), and (e), and one count of Possession of Child Pornography pursuant to 18 U.S.C. § 2252(a)(5)(B). (ECF No. 52). On September 21, 2022, Defendant filed the present Motion to Suppress and for an Evidentiary Hearing. (ECF No. 54). On November 15, 2022, Defendant filed his Reply to the Government's Response and Request for an Evidentiary Hearing pursuant to *Franks v. Delaware,* 428 U.S. 154 (1978). (ECF

1

No. 62). This case was initially before District Judge Shalina D. Kumar, but was reassigned to the undersigned on February 2, 2023.

Defendant's Motion to Suppress is based on allegations that Michigan State Police (MSP) troopers conducted an illegal search of his residence prior to obtaining a search warrant. Defendant argues the search warrant was the "direct fruit" of the troopers' initial illegal search and, therefore, any physical evidence seized during its execution must be suppressed. Defendant further argues he is entitled to a *Franks* hearing because the affidavit in support of the search warrant contains knowingly false allegations. The government opposes Defendant's motion, arguing the troopers' initial search of Defendant's residence was legal and, regardless of its legality, the search warrant and subsequent seizure of evidence were both valid. The government also opposes Defendant's request for an evidentiary hearing.

For the reasons set forth below, the court **DENIES** Defendant's Motion for an Evidentiary Hearing and **DENIES** Defendant's Motion to Suppress.

## II. FACTUAL BACKGROUND

On January 31, 2020, MSP troopers were called to a residence in Holly, Michigan, where Defendant's 14-year-old son ("MM") had taken refuge after leaving the residence he shared with Defendant. (ECF No. 57, PageID.205).

During an interview with MSP Trooper Alexis Adams, MM reported that he "ran away from home because he believes his father is a pedophile and he did not feel safe at his residence." (ECF No. 58-1, PageID.216). MM reported finding sexually offensive material in his father's bathroom and told Adams he previously observed nude images of minors on his father's tablet. (ECF No. 57, PageID.204-5). Defendant disputes what MM told Adams during this interview. (ECF No. 62, PageID.227).

After their discussion with MM, MSP troopers Alexis Adams and Sergio Corona went to investigate Defendant's residence. (ECF No. 57, PageID.205). Their initial interaction was captured on MSP dashcam video, which was submitted to the court as an exhibit. (*See* ECF No. 61). When Defendant answered his door, the troopers asked if MM was home, claiming they did not know his location and had been sent to conduct a "safety check." (*Id.* at 1:44). This was a ruse, as both parties admit to knowing MM was at the MSP post. (*Id.* at 1:48; ECF No. 57, PageID.205). Defendant initially expressed skepticism when the troopers asked to enter but, after further explanation, Defendant is heard saying "yeah," followed by noises indicative of the troopers entering the residence. (*Id.* at 2:12). Defendant is then heard showing the troopers his son's bedroom. (*Id.* at 2:36) ("so this is where he sleeps?" "yeah"). The troopers

3

eventually asked Defendant if they could look through some of the storage he had in other areas of the house, and Defendant refused. (*Id.* at 4:27) ("you guys don't need to be searching through my house without a warrant"). This was the first time Defendant said no or asked the troopers to obtain a warrant. The troopers immediately complied and asked Defendant to step outside with them. (*Id.* at 4:36) ("just do me a favor then, we're going to step outside, ok?"). The troopers were in Defendant's residence for approximately 2 minutes and 25 seconds. (*Id.*).

Adams then drafted a search warrant for Defendant's residence, along with an affidavit in support. (ECF No. 58-1). The affidavit relies on MM's statements, Defendant's own statements, and Adams' training and experience, in which she found that "suspects who have sexually explicit materials involving children, or replicas of children used for a sexual purpose… often have additional images stored on additional electronic devices and/or media storage devices." (*Id.*, PageID.217). MSP troopers executed the search warrant on February 1, 2020, at which time they found dolls with the crotch cut out and replaced by synthetic sex toys, dirty diapers, girls' underwear, numerous dildos, and large amounts of child pornography. (ECF No. 57, PageID.205). The child pornography found on VHS tapes, Defendant's cellular phone, polaroid photos, and various other media

4

forms serves as the basis for Defendant's charges. By this motion, Defendant seeks to suppress all physical evidence uncovered during this search.

## III.   ANALYSIS

### A.   Defendant's Motion for an Evidentiary Hearing

The court will first address Defendant's initial motion for an evidentiary hearing and subsequent motion for a hearing pursuant to *Franks v. Delaware.* The government argues Defendant is not entitled to an evidentiary hearing or a *Franks* hearing. The court agrees.

#### *1.   Defendant's Initial Motion for an Evidentiary Hearing*

Defendant's Motion to Suppress includes a request for an evidentiary hearing "wherein the government will be required to establish the warrantless entry and search of the defendant's home was not illegal and that probable cause existed for the issuance of a search warrant." (ECF No. 54, PageID.193). A defendant is entitled to an evidentiary hearing on a motion to suppress "only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Ikes,* 922 F.3d 708, 710 (6th Cir. 2019) (citing *United States v. Abboud,* 438 F.3d 554, 577 (6th Cir. 2006)). A defendant is not entitled to an evidentiary hearing if his or her argument is

entirely legal in nature. *Id*. at 710. Arguments that an affidavit omitted material information, that probable cause to search was stale, or that a warrant was overbroad have all been found to be legal conclusions not requiring an evidentiary hearing. *See Abboud*, 438 F.3d at 577.

     In his motion, Defendant raises two questions to be addressed at an evidentiary hearing: (1) whether the initial warrantless entry and search of his home was legal, and (2) whether probable cause existed for the issuance of a search warrant. (ECF No. 54, PageID.193). With respect to his first question, Defendant's challenge focuses on the ruse used by the MSP troopers when they first arrived at his residence and asks whether their "misrepresentation of purpose deprived [Defendant] of the ability to make a fair assessment of the need to surrender his privacy." (*Id.*, PageID.190). Defendant's second question, whether probable cause existed for the issuance of a search warrant, focuses on the validity of the magistrate judge's legal decision to issue the warrant. Both questions are entirely legal in nature, and Defendant has not shown that their answers rely on the determination of any contested questions of fact. Likewise, Defendant is not entitled to an evidentiary hearing.

      *2.*  *Defendant's Motion for a Franks Hearing*

  In his reply brief, Defendant argues he is entitled to an evidentiary hearing pursuant to *Franks v. Delaware,* 438 U.S. 154 (1978), because the affidavit supporting the search warrant includes knowingly false allegations. (ECF No. 62, PageID.227). A defendant is entitled to a *Franks* hearing only if he or she: (1) makes a substantial preliminary showing that a false statement was included knowingly and intentionally by the affiant in the warrant affidavit, and (2) the allegedly false statement is necessary to the finding of probable cause. *Franks*, 438 U.S. at 155-56. The Sixth Circuit has characterized this as a heavy burden. *United States v. Bateman,* 945 F.3d 997, 1008 (6th Cir. 2019). Allegations of negligence or innocent mistake are insufficient to warrant a *Franks* hearing. *Franks*, 438 U.S. at 171.

  Defendants may also be entitled to a *Franks* hearing based on alleged omissions. *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998). However, the standard is even higher for alleged omissions than false statements. *Id.*; *see also United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997). Likewise, a *Franks* hearing will be required only where the defendant makes a strong preliminary showing that the affiant excluded critical information with an intent to mislead,

and the omission is critical to the finding of probable cause. *Mays*, 134 F.3d at 816.

Defendant raises two key concerns with the statements included in Adams' affidavit. First, the affidavit states, "approximately six month [sic] ago, [MM] located photographs of naked young girls approximately 10 years old to 13 years old on [Defendant]'s tablet." (ECF No. 58-1, PageID.217). Defendant argues MM never told Adams the girls were 10 to 13 years old. (ECF No. 62, PageID.227). Second, Defendant argues Adams misled the court with her discussion of the troopers' initial visit to Defendant's residence by intentionally omitting that she and her partner "forced their way into his residence without consent and searched it before [he] asked them to leave and get a warrant." (*Id.*, PageID.227-28).

Defendant has not made a sufficient preliminary showing that any of Adams' purportedly false statements were made "knowingly, intentionally, or with reckless disregard for the truth." *Franks*, 438 U.S. at 155. Defendant argues Adams knowingly falsified MM's statements to add "salacious" facts to the affidavit about naked 10 to 13-year-old girls. (ECF No. 62, PageID.229). However, Defendant provided the court with an email from Adams to AUSA Christopher Rawsthorne that suggests her characterization of MM's statement was

8

reasonable, because any change was intended to be "a good faith description." (*See* ECF No. 62-1, PageID.234) ("[t]he son told me younger teenager and when I asked how did he know he said they were small younger than him teenagers. Teenage years younger than him is 10-13."). Further, even if the affidavit had matched MM's statement directly and said only "teenagers younger than MM," this would not have undermined the magistrate judge's finding of probable cause.

Defendant has also not made a sufficient preliminary showing that Adams acted deliberately or intended to mislead the magistrate judge by omitting information about the MSP troopers' initial search. Adams reasonably inferred that Defendant had consented to their entry when he responded "yeah" to their request to conduct a safety check. (*See* ECF No. 61 at 2:12). Further, even if Adams did fail to include any information about the initial search, it would not have impacted the magistrate judge's finding of probable cause. *See, e.g., United States v. Hampton*, 760 F. App'x 399, 404 (6th Cir, 2019) (finding that a failure to include information about a prior investigation was not designed to intentionally mislead the magistrate judge, so a *Franks* hearing was not required).

Accordingly, Defendant has failed to meet the heavy burden to show Adams' affidavit contained deliberate falsehoods or material omissions that

9

would have undermined the magistrate judge's finding of probable cause. Defendant is not entitled to a hearing pursuant to *Franks v. Delaware.*

      B.    <u>Defendant's Motion to Suppress</u>

The key question currently before the court is whether all evidence recovered during the search of Defendant's residence should be suppressed under the exclusionary rule and the "fruit of the poisonous tree" doctrine. The exclusionary rule prohibits evidence obtained in violation of the Fourth Amendment from being used in a criminal proceeding against the victim of an illegal search or seizure. *Herring v. United States*, 555 U.S. 135, 140 (2009). To trigger the exclusionary rule, a challenged action must be "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *United States v. Buford,* 632 F.3d 264, 271 (6th Cir. 2011) (citing *Herring*, 555 U.S. at 145). The exclusionary rule is supplemented by the "fruit of the poisonous tree" doctrine, which bars the admission of evidence derived from an unconstitutional search or seizure. *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008).

Defendant's argument for suppression focuses on the MSP troopers' initial search of his residence. He argues the troopers had an opportunity to conduct a "visual sweep of [the] interior" at which point they "noticed his bedroom and

10

bathroom cluttered with 'items and cardboard boxes' and…multiple dildos on the floor of the master bathroom." (ECF No. 54, PageID.191). He argues these observations tainted the subsequent search warrant by making it the "direct fruit of their initial illegal entry." (*Id.*, PageID.192). The government contests these allegations, arguing their initial entry was legal and there is no basis to suppress the evidence seized during the execution of the valid search warrant. The court agrees.

### 1. *The Initial Search*

Defendant argues the initial search of his residence was unlawful because consent was never given to enter his home, and any tacit compliance was undermined by the troopers' use of a ruse. The Fourth Amendment states "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…" U.S. Const. amend IV. Warrantless searches are per se unreasonable, subject to only a few specifically established and well-delineated exceptions. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citations omitted). One such exception is a search conducted pursuant to valid consent. *Id.* Consent to search must be given freely and voluntarily and must not be tainted by duress or coercion. *United States v. Cooke,* 915 F.2d 250, 252 (6th Cir. 1990).

While the use of a ruse or a trick by the police could undermine an otherwise consensual encounter, it does not always invalidate consent. *United States v. Hardin*, 539 F.3d 404, 424-25 (6th Cir. 2008). The key question when a ruse is involved is whether "police misrepresentation of the purpose was so extreme that it deprived the individual of the ability to make a fair assessment of the need to surrender his privacy." *Id.* at 425 (citing 2 Wayne LaFave *et al.*, CRIM. PROC. § 3.10(c) (3d. ed. 2007)). A court must look to whether the ruse "created a scenario where [a defendant] had no choice but to concede his privacy interests." *Id.* While not dispositive on the issue, courts have historically considered factors such as whether the individuals interacting with the defendant could easily be identified as law enforcement officers or whether the ruse was based on a claim of imminent or life-threatening danger. *See United States v. Gregory,* 456 F. App'x 533, 537 (6th Cir. 2012) (it was important that the defendant was aware he would be accompanying a law enforcement officer, unlike cases where officers hid their identity); *Hardin*, 539 F.3d at 425 (a ruse involving a water leak presented a situation in which an individual would feel "no choice but to invite the undercover officer in").

The court has viewed the dashcam video of the MSP troopers' initial visit to

12

Defendant's residence on January 31, 2020, and finds Defendant's assertions that troopers "forced their way into [his] residence without consent" are baseless. (*see* ECF No. 61). The video of the initial interaction provides sufficient evidence that Defendant consented to the troopers' entry for the limited purpose of viewing his son's room and other relevant areas of his residence. (*See Id.* at 2:12) (Defendant responded "yeah" and can be heard entering the residence with the troopers). At all times, the troopers' tone and language was friendly and professional, and there is no evidence that they used physical force or threats of violence. Once they were inside, Defendant even led the troopers to MM's room and explained its condition. (*Id.* at 2:37) ("he just did this…this was kicked over…this gaming chair was knocked over…"). Defendant also demonstrated he was aware of the initial scope of the search by asking the troopers to obtain a search warrant when they sought to search other areas. (*Id.* at 4:36) ("you guys don't need to be searching through my house without a warrant").

  Further, there is no indication that the troopers' use of a ruse negated Defendant's consent. When they arrived, the troopers claimed they were sent to conduct a safety check of MM's room and the residence as a whole. (*Id.* at 1:44). This explanation, while untrue, was not so extreme that it deprived Defendant of the ability to make a fair assessment of the need to surrender his privacy. *Hardin*,

539 F.3d at 425. The troopers did not utilize a disguise or false identity, and the explanation given by the troopers was not based on an imminent risk or life-threatening danger. *See Gregory*, 456 F. App'x at 537; *Hardin*, 539 F.3d at 425. Because the troopers' entry was pursuant to valid consent, and Defendant's consent was not undermined by their use of a ruse, the initial search of his residence was lawful.

### 2. The Valid Search Warrant

As discussed above, the court finds that Defendant consented to the troopers' initial search of his residence. However, even if he did *not* provide valid consent, the search warrant is not the "unlawful fruit" of their entry, because it does not include any observations or information gathered while the troopers were inside his residence.

The Sixth Circuit has held the mere existence of a fruitless unlawful search does not taint a subsequent lawful one. *United States v. Elmore,* 18 F.4th 193, 199 (6th Cir. 2021), *cert. denied*, 212 L. Ed. 2d 617 (2022). Derivative evidence will not be suppressed where the connection between the challenged evidence and any constitutional violation is remote or attenuated. *Id.* To determine whether evidence should be excluded as the "fruit of the poisonous tree," a court should ask whether the evidence "has been come at by exploitation of [the underlying]

14

illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)).

In this case, there is no connection between the troopers' initial entry into Defendant's residence and the subsequent seizure of physical evidence. While the troopers may have observed "items and cardboard boxes" around the residence and "multiple dildos on the floor of the master bathroom," (ECF No. 54, PageID.191), Adams did not include any of these observations in her affidavit. Rather, her affidavit is based entirely on statements made by MM, statements made by Defendant himself, and her own professional experience. Specifically, the affidavit bases probable cause on MM's statements that he found "sexually offensive material inside of his father's…bathroom" and previously observed "photographs of naked young girls approximately 10 years old to 13 years old on [Defendant]'s tablet." (ECF No. 58-1, PageID.217). The affidavit also includes statements made by Defendant to the troopers that "he does have sex with a baby doll" and is "in possession of diapers and he uses them on the baby dolls."[1] (*Id.*). Defendant fails to show how any of the information used to support a

---

[1] These statements were made while the MSP troopers were securing the house to obtain a search warrant after they asked Defendant to step outside. (ECF No. 57, PageID.205). The government argues that, despite telling Defendant he was free to leave on two separate occasions, he chose to stay with them in the police car. (*Id.*). Defendant has not contested that he made these statements at that time.

15

finding of probable cause in the search warrant is related to the troopers' initial search and, therefore, it is not the "fruit of the poisonous tree."

### 3. Probable Cause

Defendant separately argues Adams' affidavit in support of the search warrant did not establish probable cause to search his residence. For a search warrant to be valid, it must be supported by probable cause. U.S. Const. amend IV. Probable cause is defined as "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) (citations omitted). In determining whether to issue a warrant, a magistrate judge must decide, "given all the circumstances set forth in the affidavit…there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). A reviewing court must accord "great deference" to a magistrate's determination. *United States v. Allen,* 211 F.3d 970, 973 (6th Cir. 2000) (en banc) (citations omitted).

Defendant argues "none of the 14 allegations of the affidavit provided probable cause to believe evidence of any crime would be found at [his] residence." (ECF No. 62, PageID.229). However, the court does not find any reason to disturb the magistrate judge's finding of probable cause. The affidavit,

including statements that MM saw nude images of minors on Defendant's tablet and Defendant's own admissions that he has sex with a baby doll, certainly provided reasonable grounds to believe evidence of child pornography would be found at his residence. Therefore, the warrant was valid and contained sufficient probable cause to search Defendant's residence.

## IV.   CONCLUSION

For the reasons above, the court finds that Defendant is not entitled to an evidentiary hearing on his motion. Further, the basis upon which Defendant seeks to exclude the evidence seized from his residence is insufficient. Defendant's Motion to Suppress and for an Evidentiary Hearing is **DENIED.**

**IT IS SO ORDERED**.

<u>s/ F. Kay Behm</u>
F. Kay Behm
United States District Judge

Dated: April 5, 2023