UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVSION

UNITED STATES OF AMERICA,

                Plaintiff,             CASE NO. 21-cr-20088
                                        HON. F. KAY BEHM

vs.

JEREMY MCCALLUM,

                Defendant.

_____/

**DEFENDANT'S SENTENCING MEMORANDUM**

There are no excuses or justifications for Mr. McCallum's actions.  Children were abused and the aftereffects of that abuse continue to ripple years after these crimes were committed.  But there is a tragic realization to what brings us to this Court for sentencing.  Early in his life, as is often the case with people who commit the crimes that Mr. McCallum committed, he was also victimized by adults who were supposed to give Jeremy safety, security, and a proper role model to follow.

**THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT
18 U.S.C. §3553(a)(1)**

The path to this courtroom began when Mr. McCallum was a child.  As a toddler he witnessed abuse and addiction, a recipe that ended when he was four years old in the fracture of his home because of his parents' divorce.  When the

dust cleared, Jeremy, along with his 5 siblings, was abandoned by his father.  As a result, his mother worked non-stop to keep herself and her children barely above the poverty line.  By the time he was 7 years old, Jeremy's mother began seeing the effects of the divorce on her son and wanted Jeremy to have a male role model.  She turned to the Big Brothers/Big Sisters organization for help.  What she expected was the positive male role model and emotional guidance that Jeremy needed.  Instead, Jeremy was preyed upon and sexually abused.

His first mentor groomed Jeremy with weekends filled with ice cream and movies, but most of all personal attention.  Within months, it turned into a year and a half sexual relationship that only ended after his "Big Brother" moved to Boston, Massachusetts.  All that did was leave Jeremy for other predators in the Big Brothers program to abuse him.

The aftermath has been a vicious cycle of failed relationships, depression, bi-polar disease, alcohol and drug abuse, and attempts at suicide.  Fear, low self-esteem and repeated rejections kept him from seeking help for his attraction to minors.  Despite these issues in his life, Jeremy stayed away from his compulsions for a significant period of time after these crimes were committed.  Part of the solution was Jeremy finally reaching out to his mother for help on how to end the cycle of abuse and to deal with his compulsions for minor children.  That ended

abruptly in 2012 when his mother died months after being diagnosed with colon cancer.

Without his mother's emotional support, Jeremy still managed to stay away from minor children.  Instead, he turned to "self-medication" using sex dolls, videos, and pictures to deal with his compulsive thoughts and behaviors, as opposed to turning back to actual children.

## THE NEED TO AFFORD ADEQUATE DETERENCE TO CRIMINAL CONDUCT AND TO PROTECT THE PUBLIC FROM FUTURE CRIMES OF THE DEFENDANTS – 18 U.S.C. §3553(a)(2)(b-c)

Jeremy is 48 years old.  We suggest that the Court sentence Jeremy to concurrent terms on each charge that will result in a 300-month prison sentence.  If the Court chooses to do so, he will be in his 70s. The United States Sentencing Commission makes it clear that by that age, the risk of recidivism is dramatically reduced. "Among all offenders under age 21, the recidivism rate is 35.5 percent, while offenders over age 50, have a recidivism rate of 9.5 percent." United States Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* 12(2004).  After age 60, the recidivism rate drops to less than 5 percent. R. Karl Hanson, *Recidivism and age: Follow-data on 4,673 sexual offenders,* 17 J.Interpersonal Violence 1046-1062 (2002).

In sentencing Jeremy, the Court is not required to trust that Jeremy will not return to his compulsions if released. If he continues to pose a sexual danger upon release, Congress has built in provisions to guard against releasing those who still may recidivate even in the latter years of life.  Upon commitment to the Bureau of Prisons, Jeremy will be subject to evaluation pursuant to the civil commitment provisions outlined in 18 U.S.C. §4248.  As a result, a determination of whether he still poses a sexual danger to the community will be made by the BOP or Attorney General prior to his release from custody. If it is determined that Jeremy remains a sexual danger, he would be held in the custody of the state until he no longer poses a threat as defined by the statute.

## THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES AMONG DEFENDANTS WITH SIMILAR RECORDS WHO HAVE BEEN FOUND GUILTY OF SIMILAR CONDUCT -- 18 U.S.C. §3553(a)(6)

A 300-month sentence that runs the convictions on each count concurrent with each other would be a just punishment that is no greater than necessary to address the factors set forth by Congress in 18 U.S.C. §3553(a).  To support this conclusion, the Court can refer to the PSIR's JSIN statistics for guidance.

During the last five fiscal years (FY2019-2023), there were 824 defendants whose primary guideline was §2G2.1, with a Final Offense Level of 43 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 824 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 348 month(s) and the median length of imprisonment was 360 month(s).  For all 824 defendants in

the cell, the average sentence imposed was 348 month(s) and the median imposed was 360 month(s).

PSIR, ¶164.

Case law in the Eastern District of Michigan affirms the JSIN findings.

- Daniel Nickie Jones received a 444-month sentence after producing and possessing his own child porn videos.  Unlike Mr. McCallum, Jones had three prior convictions for criminal sexual conduct with victims under 13 years of age. *See United States v. Daniel Nikki Jones,* No. 16-cr-20832-PDB (E.D. Mich. 2018)(Borman, J).

- Nicholas Wilcox received 420 months in prison after soliciting over 200 boys for nude photos and then extorting them with nude pictures that the boys had sent him.  Like Jones, Wilcox had prior convictions for sexual misconduct. *United States v. Nicholas Glenn Wilcox,* No. 15-cr-20682-BAF (E.D. Mich. 2017)(Friedman, J.)  Wilcox had an extensive criminal history, including Home Invasion, 2nd Degree, Possession of Child Pornography, and twice for failing to register as a sex offender.

- Wade Hampton Perkins was sentenced to 492 months in prison for sexually abusing two infants and a toddler and producing images of the abuse. *See United States v. Wade Hampton Perkins,* No. 18-20042-VAR (E.D. Mich. 2019)(Roberts, J.)

- Hadassah Huber was sentenced to 220 months for creating and distributing images of herself performing oral sex on her infant child. *See United States v, Hadassah Huber,* No. 13-cr-10490-TLL (E.D. Mich. 2015)(Ludington, J.)

Unlike several of the defendants listed, Jeremy has never been incarcerated. A sentence of 300 months will deeply affect him, in the same ways that a longer sentence would affect Jeremy. It will constitute just punishment and respect for the law. And as indicated above, if he is not deemed reformed or a non-danger to the community, Jeremy will be committed to a civil institution.

## CONCLUSION

As the Court looks at Jeremy, it is easy to focus on the crimes he committed and the frustration that he has caused this Court and his jailors. The reality is that in many ways Jeremy is still the same child and teenager who was abused and victimized by those he should have trusted for guidance and support. He is paralyzed by fear, depression, and the inability to trust others. Since he has been incarcerated, he has been threatened, beaten, abused. As a result, he is unable to do anything else but lash out in frustration.

The positive news is that Jeremy does want help. He had a taste of that help at the SEA-TEC facility where he was counseled, properly medicated, and in a relatively safe environment. As evidenced by his recent motion, he wants to go

back there or a facility that is similar to SEA-TEC.  With that in mind, the Court can hope for the best.  The Court can further be assured that if Jeremy is still deemed a sexual danger, he will be committed to a civil institution where he will likely spend the rest of his life.  With that in mind, a sentence that runs each count concurrent with each other for a term of 300 months in the custody of the Bureau of Prisons is sufficient but no more than necessary to punish Jeremy for the crimes he has committed.

Respectfully submitted,

*/s/ Haralambos D. Mihas*
Haralambos D. Mihas, P66417
467 Eureka Road, Suite 1
Wyandotte, Michigan 48192
(734) 692-3033
hdmihas@smithmihas.com

*Attorney for Jeremy David McCallum*

Dated: October 1, 2024

CERTIFICATE OF SERVICE

I certify that on October 1, 2024, I filed with the Clerk of the Court and served all interested parties a copy of the aforementioned Defendant's Sentencing Memorandum through the Court's CM/ECF Electronic Filing and Service System.

*/s/ Haralambos D. Mihas*
Haralambos D. Mihas, P66417
*Attorney for Jeremy McCallum*