UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

v.

Case No. 21-cr-20088

Hon. F. Kay Behm

JEREMY MCCALLUM,

    Defendant.

## THE UNITED STATES' SENTENCING MEMORANDUM

    In an area of law that highlights the darkest corner of the human condition, McCallum has a special place. His crimes are prolific and unspeakably horrific. And his acceptance of responsibility came only after all options to avoid accounting for his crimes failed.

    For nearly a decade, McCallum presided over a house of horrors where at least three children had to endure horrific sexual abuse, as McCallum memorialized that abuse on video and through images. McCallum was like a monster lurking in the shadows, taking advantage of every opportunity to exploit the children who had the misfortune to cross his path.  On the first night of abuse for MV-1, who suffered at McCallum's hands the longest, McCallum pulled out a gun and pointed at her baby sister, MV-2. McCallum then told MV-1 if she told

anyone what happened she 'would lose her sister.'" (PSR ¶ 16). McCallum caused massive, lasting damage to multiple victims. No matter where their lives take them, they will have to carry the weight of the trauma he inflicted forever.

McCallum's deep-seated sexual interest in children is not the only thing that characterizes his veritable house of horrors. He stored soiled diapers that he retrieved from the trash at WalMart in a small refrigerator, created sex dolls out of modified baby dolls with sex toys for genitalia, amassed an ungodly number of dildos, and had child pornography and various child erotica (including some that he created by cutting out pictures of children from magazines and affixing genitalia to their images) within the residence. McCallum is so frightening other inmates who committed similar offenses were horrified when housed with him.

The only appropriate sentence for McCallum---the one that reflects the pain and horror he has inflicted, that provides the victims with some feeling of satisfaction for his torturous behavior, and that provides a message to those who commit the worst crimes against the most vulnerable of victims that they will pay for their offenses---is the guideline sentence, a sentence of 3,480 months.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A. Police Discover McCallum's House of Horrors

On January 31, 2020, a minor known and close to McCallum ran away from

2

McCallum's house and reported to police that McCallum was a pedophile that had photographs of naked minors. (R. 57, 204-205). This caused police to visit McCallum's trailer in Holly, Michigan. McCallum refused to consent to allow Michigan State Police Troopers to search his home and they obtained a warrant. That search resulted in the discovery of items and conditions that are beyond comprehension. McCallum's house had numerous pairs of children's underwear (despite no children of that age living in the residence), soiled diapers stored in a refrigerator, baby dolls with sex toys inserted into the genital area, over 50 dildos, hand-drawn images of nude children, nudist magazines, books discussing the abuse of children, magazine cut-outs of children in bathing suits, and numerous masks, including devil masks. Some of the pictures taken by officers from within his house are below:














5








6





Unfortunately, the disturbing nature of those items paled in comparison to the evidence of the abuse of children discovered within the residence. Investigators recovered numerous electronic devices, VHS tapes, Polaroid pictures, and other images of sexual exploitations of minors. (R.1, 4-5).

They were able to immediately observe and identify recordings of McCallum sexually abusing MV-1 and MV-2. (PSR ¶ 15). The recording demonstrated that McCallum engaged in long-term sexual abuse of MV-1. There

7

are videos of her at various ages of her sexually assaulted by McCallum. The videos of the sexual assault of MV-2 occurred when MV-2 was an infant. Those images---McCallum ejaculating onto MV-2, penetrating MV-2 with his finger, and other sadistic images---all occur when MV-2 appears to be under one-year-old. Law enforcement eventually located video of the abuse of MV-3, which is defined by the vacant look in MV-3's eyes as McCallum performs sexual acts on him. It is clear from the videos of MV-1 and MV-3 that McCallum has persistently brutalized them.

    A forensic interview with MV-1 confirmed that McCallum had tortured her for approximately eight years. McCallum assaulted her from the very first night she stayed at his house when she was around four years old, pointing a firearm at her sister and threatening her. (PSR ¶ 15). McCallum performed oral sex on her, made her rub her vagina on his penis, and that it is how he consistently sexually assaulted her. (PSR ¶ 16). McCallum engaged in other acts as well, clandestinely recording children in his bathroom, trying to convince her to get other children into his van, and stealing other children's underwear. She recounted that he made her engage in sex acts with a rubber sex toy. (PSR ¶ 20). She stated that there were so many recordings that she could not remember how many there were. *Id.* Perhaps the most revolting story involved McCallum's assault causing her to bleed as she

8

screamed and cried out in pain. (PSR ¶¶ 19, 20).

MV-2 likewise recounted several instances of sexual abuse by McCallum. MV-1 stated that McCallum forced MV-2 to perform sex acts on him. MV-2 revealed several instances where McCallum assaulted her and made her engage in sexual acts with objects. (PSR ¶¶ 21-24). While the recovered videos of MV-2 all appear to be from when she was much younger, her account is quite consistent with MV-1's experiences.

Finally, MV-3 was forensically interviewed, and also disclosed abuse by McCallum. He specifically recalled one time that McCallum videotaped him while sexually abusing him. When the FBI methodically reviewed the VHS tapes recovered during the search warrant, they eventually found a video of McCallum sexually assaulting MV-3.

McCallum, on the night of the search warrant, made several admissions to police. He admitted that there were videos of him sexually assaulting children, and he said that there would be four victims. Only three victims have been found. He denied abusing his biological children. (PSR ¶ 27). McCallum, who never worried about the damage he inflicted on the children abused, opined that he was concerned about his safety in prison.

Both the state and federal governments filed charges against McCallum.

9

McCallum initially agreed to plead guilty through an information, only to back out of it. (R. 20, Pg.ID 77-80). He then cycled through attorneys, often complaining of their services and lobbing personal insults at them in the process. He told one attorney following asking for his removal in the case that he would "see him in hell" and made fun of another attorney's stutter on the record. The government eventually superseded in an eleven-count indictment. (R. 77, 302-309). Counts 1 – 8 involved McCallum taking images of MV-1 lasciviously displaying her genitals or engaging in sexual abuse of her, Count 9 involved a video of the sexual abuse of MV-2, Count 10 involved a video of the sexual abuse of MV-3, and Count 11 related to his possession of the child pornography that McCallum created and other child pornography that McCallum downloaded on the Internet. (PSR ¶¶ 28-39). The government is providing the Court a copy of the materials that underly each of these counts.

     On June 28, 2024, McCallum pleaded guilty to all counts in the indictment without a Rule 11 Agreement. McCallum pleaded guilty with trial only weeks away. McCallum's guilty plea came after the government had met with the victims in this case and they all had to deal with the strong likelihood that they would have to face him again in Court and describe their abuse in public. Even while in custody and separated from the victims for several years, McCallum found a way

to torment his victims.

## II. THE 18 U.S.C. § 3553 FACTORS REQUIRE A GUIDELINE SENTENCE

The Court considers the factors set forth in 18 U.S.C. § 3553 when determining the appropriate sentence. Those include the nature and circumstances of the offense, McCallum's history and characteristics, for the sentence to reflect the seriousness of the offense and promote respect for the law, and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(1), 2(A)-2(C).

### A. McCallum Committed the Most Serious of Offenses for a Long Period of Time.

The Court first considers the nature and circumstances of the offense, which here beg for the maximum sentence. 18 U.S.C. § 3553(a). McCallum raped children and did so for years. He exploited vulnerable women to gain access to their children so he could abuse and assault their children. But sexually assaulting them was not enough for McCallum. To completely fulfill his desires, he needed to memorialize his acts on film. There are simply no crimes more serious than that which McCallum has committed, and he did it over, and over, and over again.

Living life as MV-1, being subjected to nightly rapes, sometimes recorded, at the hands of McCallum, is a kind of torture that is hard to comprehend. And it went on for years. MV-1 in a letter to the Court filed as Exhibit A, provides a

11

glimpse at her unimaginable situation. She explains how she remembers "what he was wearing, the look in his eyes, and the way that he asked if it felt good and told me what he would do to my sister and mom if I ever told" on the first night she was abused. She was moved in with McCallum, by herself, shortly after, where he continued to beat and sexually assault her. She would try to "zone out" but eventually just wished that she would die. As she notes, the videos and photos recovered, and accounted for in the charged offenses in this case, are only a small representation of what he put her through. She remembers getting in trouble on one occasion, and McCallum beating her. He then conditioned his forgiveness on her allowing him to sexually assault her in a painful, degrading way. She describes in detail the result of McCallum's years-long abuse. She has several mental health issues, has trouble leaving the house alone, and did not finish school. In a particularly poignant portion of her letter, she notes:

> I may never fully heal from the damage he has done to me, and honestly how could anyone? He took my childhood; he took any sense of innocence from me at only 4 years old. He also hurt my little sister, and the fact that I couldn't protect her even when I tried is a heavy burden, I have had to carry along with every kid was a made a victim because I couldn't get them to check that stupid closet.

(Ex. A at 3). MV-1's accounts provide strongest evidence of the grave nature and circumstances of this offense. Even though she is an adult now and has overcome many things that few people in our society can barely even

12

conceptualize, MV-1 will carry the emotional scars inflicted on her by McCallum for the rest of her life.

Despite McCallum's claims that he did not comprehend the wrongfulness of his acts, he knew enough to threaten her, he knew enough to lie to CPS workers when there were complaints, and he knew enough to convince the victims to recant their stories. It is likely that he sexually assaulted MV-1 well over 500 times, with additional assaults against MV-2 and MV-3. The nature and circumstances of this offense provide strong reasoning for a maximum, guideline, sentence as there is simply not a sentence that can truly account for the nature of this offense.

### B. McCallum's Defining Characteristic is Unrestrained Pedophilia Resulting in the Abuse of Children.

While the Court must review McCallum's history and characteristics, his defining characteristic is a total inability and lack of desire to control his sexual attraction to children. Any other characteristic---a troubled childhood, mental health issues, etc.---pales in comparison to that.

McCallum's criminal history is unremarkable and includes a single conviction for possessing a firearm under the influence. (PSR ¶ 102). Of course, this lack of criminal record is only because he was able to evade prosecution and arrest through careful planning and manipulation. McCallum has mental health

13

issues and has a history of substance abuse but had consistent employment until 2011 and little thereafter; belying any assertion that he was not fully in command of his actions and faculties and underscoring his dangerousness. (PSR ¶¶ 125, 121-123, 132). But other aspects of McCallum that come through in the PSR nod to how disturbing he is. In the context of this case, his choice of cartoon characters for his tattoos and that the hobbies that he reported to the Probation Department include visiting "playgrounds and waterparks" can make one lose sleep at night. (PSR ¶ 116, 130).

McCallum claims that he was extensively sexually abused during his childhood. (PSR ¶ 11). It is likely he will use this alleged history as an argument for a lower sentence. This argument lacks merit. There is a pervasive misbelief that being a victim of sexual abuse causes someone to become a perpetrator themselves. There is no question that victims of childhood sexual abuse have higher rates of violent offenses and substance abuse later in life. *See* https://www.d2l.org/wp-content/uploads/2017/01/Statistics_5_Consequences.pdf. But far too often in the search for answers as to why some do the unthinkable, there is a desire to form too strong a correlation between prior victimization and offending against children. Some studies have shown that abusers often make up claims of prior abuse for sympathy, and the strength of the correlation between

14

prior victimization and offending is a matter of some debate. *See* Anna C. Salter, *Predators: Pedophiles Rapists and Other Sex Offenders*, 72-73 (2003). Regardless of whether a correlation exists, the vast majority of those who are sexually abused as children do not go on to abuse others. https://livingwell.org.au/managing-difficulties/addressing-the-victim-to-offender-cycle/. It is incumbent on McCallum---if this abuse occurred---to avoid putting others through what he went through. It does not provide a justification, excuse, or even mitigation for his own unrepentant assaults on others.

McCallum's defining characteristic is that he brutalizes children without remorse. He generally recognizes that it is wrong and understands that society views it as wrong. But he seems to have no guilt, no shame, and no regret about what he has done to these victims. He protests in open court that he is a pedophile and that it is a mental illness. But there is no indication that he has ever done anything to try to control his actions or desires, to remove himself from situations that put him in contact with minors. In fact, McCallum stated that he, at one time, wanted to be a teacher and even completed a degree in early childhood education. (PSR ¶ 129). There is no guilt, no shame, and little recognition of the destruction he wrought; all of which make McCallum an unmitigated danger to society.

### C. The Need to Protect the Public, as well as Provide a Just Punishment, and Reflect the Serious Nature of the Offense Require the Maximum Sentence.

The need to protect the public is immense given McCallum's actions. While a sentence of 100 years might do that, it would not reflect the serious nature of this offense, nor would it provide the punishment just enough to vindicate the victims in this case. While 290 years might seem like a very long sentence, ***it is the guideline sentence in this case***. Any other sentence tells the victims and the public that McCallum warrants or deserves a variance or departure, that there is something about his offense or himself that is mitigating enough to go beneath the sentencing guidelines. A departure or variance here is not acceptable. For the sentence to align with the factors under 18 U.S.C. §3553, this Court should remain within the guidelines and sentence McCallum to 290 years' imprisonment.

### III. CONCLUSION

A sentence of 290 years sadly represents a punishment of substantially less than six months or less for each time he sexually assaulted MV-1 alone. Given that McCallum assaulted MV-1 on a near-nightly basis for years, engaged in assaults on MV-2 and MV-3, and admitted assaults to other children, a guideline sentence is appropriate. This Court cannot undo the damage that McCallum has done to these victims---it cannot restore their innocence, undo their bleeding, prevent their

16

mental health problems, restore their trust in others, and prevent nightmares from the abuse McCallum wrought. But it can hold McCallum responsible and provide them with the justice they deserve. And a sentence that does that is a sentence of 290 years' imprisonment.

                                            Respectfully submitted,

                                            DAWN N. ISON
                                            United States Attorney
                                            Eastern District of Michigan

                                            s/CHRISTOPHER W. RAWSTHORNE
                                            Christopher W. Rawsthorne
                                            Assistant United States Attorney
                                            600 Church Street
                                            Flint, MI 48503
                                            (810) 766-5032
                                            Email:  Christopher.rawsthorne@usdoj.gov

                                            *s/Tara Mathena Hindelang*
                                            TARA MATHENA HINDELANG
                                            Assistant United States Attorney
                                            211 W. Fort Street, Suite 2001
                                            Detroit, MI 48226
                                            tara.hindelang@usdoj.gov
                                            (313) 226-9100

Date: October 1, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2024, I electronically filed the foregoing document with the Clerk of the Court of the Eastern District of Michigan using the CM/ECF system which will send notification of such filing to all ECF participants of record via electronic mail.

*s/Christopher W. Rawsthorne*
CHRISTOPHER W. RAWSTHORNE
Assistant United States Attorney
